UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RICK WILLIAMS, et al., | Case No. 2:13-cv-02019-APG-PAL |
| Plaintiff, | ORDER |
| v. | |
| CONVIVIAL CORP., et al., | |
| Defendant. | |

Before the court are the parties' competing Proposed ESI Protocols and Proposed Forms of Order (Dkt. ##37, 38) and Defendants' Response to Plaintiffs' Proposed ESI Protocols (Dkt. #39).

The parties were unable to agree on a stipulated ESI protocol and submitted their competing proposals as ordered. The parties agreed on most of the provisions of the proposed protocol, but have several differences. Plaintiffs propose inserting a guidelines section in the protocol, the purpose of which is to: 1) encourage reasonable electronic discovery with the goal of limiting the cost, burden and time spent while ensuring information subject to discovery is preserved and produced; 2) require the parties to cooperate in good faith on issues relating to the preservation, collection, search, review and production of ESI; and 3) adopt the proportionality standard of Fed. R. Civ. P. 26(b)(2)(C) and 26(g)(1)(B)(iii). Plaintiff's proposal would also contain a provision that the protocol may be modified by court order or by stipulation as required by developing circumstances of the litigation.

Defendants' proposal would contain a provision requiring de-duplication of email specifying the method for de-duplication which Plaintiffs' proposal does not. Defendants object to Plaintiffs' proposed ESI protocol asserting Plaintiffs' proposal would strip or significantly limit Defendants' ability to obtain ESI, including metadata. Specifically, Defendants object to

language in Plaintiffs' proposed protocol in Paragraph A-3 defining data. Defendants would define data as ESI including metadata. Plaintiffs propose to define data as ESI and would include a sentence that, to the extent metadata is reasonably relevant to the claims and/or defenses at issue, data would include metadata. Defendants contend that this qualifying language effectively limits the scope of discovery, and that if either party believes a specific ESI request is outside the scope of permissible discovery, the parties should be required to meet and confer, and if unable to resolve the dispute, move for a protective order.

Defendants also object to Plaintiffs' proposed ESI protocols which would permit the Plaintiffs to produce one pdf file containing thousands or hundreds of thousands of sub-files requiring the receiving party to expend time and effort to comb through the parent file to separate out the various sub-files.

The parties also submitted a proposed Exhibit A entitled "Technical Specifications for Document Production" which both sides proposed would be integrated as an appendix to the ESI protocol. The parties agree on many, but not all of the technical specifications.

Having reviewed and considered the matter, the court adopts the guidelines that Plaintiffs propose concerning purpose, cooperation and proportionality. The court also adopts Plaintiffs' position with respect to metadata. Plaintiffs' proposal is more consistent with the Sedona Principles Best Practices Recommendations, that in most cases, metadata will have no material evidentiary value. *See The Sedona Conference's Best Practices Recommendations & Principles for Addressing Electronic Document Production,* 2nd Ed. 2007.

The court adopts the Defendants' proposal with respect to production of pdf files and request that the parties be required to de-duplicate their own ESI. The court agrees that it is unreasonable to permit a party to produce a pdf file consisting of voluminous sub-files and to require the receiving party to expend time and effort combing through the parent filed to separate out the sub-files. The producing party is in the best position to know how best to de-duplicate its own ESI, and requiring the producing party to de-duplicate its own ESI prevents the receiving party from spending countless hours reviewing multiple copies of the same documents.

Having reviewed and considered the parties' proposed ESI protocols,

**IT IS ORDERED** that the following ESI protocols shall apply in this case:

**A.**     <u>Definitions</u>.  For the purposes of this order, the following definitions shall apply:

1.     "Non-identical," when used to describe either an electronic or hard copy document, means that the document shows at least one facial change, such as the inclusion of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes.

2.     "Parties" means the parties to this litigation, including their employees and agents.

3.     "Data" includes all Electronically Stored Information as that term is used in Federal Rule of Civil Procedure 34.  To the extent metadata is reasonably relevant to the claims and/or defenses at issue, the definition of "data" includes metadata.

**B.**     <u>Guidelines</u>.

1.     **Purpose**.  The discovery of electronically stored information ("ESI") provides many benefits such as the ability to search, organize and target ESI using the text and associated data.  However, the discovery of ESI is a potential source of cost, burden, and delay.  The court imposes these guidelines to encourage reasonable electronic discovery with the goal of limiting the cost, burden and time spent, while ensuring that information subject to discovery is preserved and produced to allow for fair adjudication of the merits.  At all times, the discovery of ESI should be handled consistently with Fed. R. Civ. P. 1 to "secure the just, speedy, and inexpensive determination of every action and proceeding."

2.     **Cooperation**.  The court expects the parties to cooperate in good faith on issues relating to the preservation, collection, search, review and production of ESI.  An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.  Cooperation in reasonably limiting ESI discovery requests on the one hand, and in reasonably responding to ESI discovery requests on the other hand, tends to reduce litigation costs and delay.  The court emphasizes the importance of cooperative exchanges of information at the earliest possible stage of discovery, including during the parties' Fed. R. Civ. P. 26(f) conference.

3. **Proportionality**.   The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) and 26(g)(1)(B)(iii) should be applied to the discovery plan and its elements, including the preservation, collection, search, review, and production of ESI.   To assure reasonableness and proportionality in discovery, parties should consider factors that include the burden or expense of the proposed discovery compared to its likely benefit, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in adjudicating the merits of the case.   To further the application of the proportionality standard, discovery requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.

C.   **Electronically Stored Information**.

1. **Preservation Not Required for Electronically Stored Information That is Not Reasonably Accessible.**

a.   The following categories of ESI shall be deemed "not reasonably accessible" pursuant to FRCP 26(b)(2)(B).   Accordingly, Parties need not preserve the following categories of ESI for this litigation:

i.   Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice, provided that such information is, in fact, preserved in a primary storage system;

ii.   Voicemail messages, provided that if a copy of such voicemail messages is routinely saved elsewhere, such copy will be preserved and produced upon request;

iii.   Data stored on photocopiers, scanners, and fax machines;

iv.   Server, system, or network logs, provided that if a backup of such information is routinely saved elsewhere, such backup will be preserved and produced upon request;

v.   Electronic data temporarily stored by scientific equipment or attached devices, provided that if the data ordinarily preserved as part of a laboratory report is

4

preserved in its ordinary location and form, such data will be preserved and produced upon request; and

        vi.    Data stored on legacy systems that have been retired, so long as those retired legacy systems do not contain unique data, *i.e.*, data that can only be found on those systems.

    2.    **Use of Documents During Litigation**.  Notwithstanding any other provision of this order, the Parties may take any of the following actions with respect to documents and ESI.

    a.    The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the complaint was filed in this matter. Nothing in this paragraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI created after the complaint was filed in this matter.

    b.    The Parties may delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of lease, provided that the potentially relevant ESI is first copied to a new location in a manner that preserves data, including metadata.

    c.    The Parties may copy data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata.

    d.    The Parties may load loose ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields that must be produced under this order and does not convert the format of the ESI in a way that makes it significantly less accessible or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection.

    e.    The parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter existing data or the way data is maintained, stored, or viewed, provided that the relevant data itself is not altered.

    f.    Subject to the preservation requirements, the Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of

the database: input additional data; access data; update the software running the database; append the new data; and modify existing data.

        g.     The Parties may edit or take down any data on a publicly accessible internet site.

        h.     The Parties may add data to an intranet or private website.

        i.     The Parties may update social media sites, but may not take affirmative steps to delete relevant data posted before the filing of the Complaint.

    3.     **Preservation Does not Affect Discoverability or Claims of Privilege**.  By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

    4.     **Procedures for Production**.  The procedures for production are set forth in Exhibit A to this order, and are incorporated herein by this reference.  Compliance with the procedures set forth in Exhibit A shall constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

    5.     **Duplicates.**

        a.     The parties shall be responsible for taking reasonable cost-effective measures to de-duplicate email and ESI other than email.

    6.     **Meet and Confer Requirements**.

        a.     Discovery Disputes.  Before filing any motion with the Court regarding electronic discovery or evidence, the Parties shall meet and confer in a good faith attempt to resolve their disputes.

        b.     Search Terms.  If a discovery dispute arises, the Parties shall meet and confer to identify mutually agreeable search terms for email messages and other electronically stored information.

**D.**    **Protection of Privileges**.

    The Parties' agreed to stipulate, and this court therefore orders that pursuant to Rules 16(b) and 26(c) of the Federal Rules of Civil Procedure, and pursuant to Rule 502(d) of the Federal Rules of Evidence:

1.      This Order invokes the protections afforded by Rule 502(d) of the Federal Rules of Evidence.  Accordingly, the provisions in Rule 502(b) will not apply to the disclosure of communications or information in discovery in this matter.

2.      The prosecution and defense of this action will require each Party to review and to disclose potentially voluminous information and documents, including electronically stored information, through the discovery process.

3.      Each Party is entitled to decide the appropriate degree of care in reviewing materials for privilege, taking into account the volume and sensitivity of the materials, the demands of the litigation, and the resources that the Party can make available.  Disclosure of privileged or protected information or documents in discovery conducted in this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding—of any claims of attorney-client privilege or work product protection that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter.

4.      Because expedited or truncated privilege review is likely necessary for the just, speedy, and inexpensive resolution of this matter, and because Rule 502(d) does not preserve privileges other than the attorney-client privilege and work-product protection, the Parties shall not be required to review each and every page of the materials produced in discovery for all applicable privileges.  Accordingly, the Court orders that disclosure of privileged or protected information or documents in discovery conducted in this litigation will be deemed unintentional and inadvertent.  Such disclosure will not constitute a waiver of the disclosing Party's right to claim any privilege or protection that would have applied to the information or documents or their subject matter but for the disclosure, provided only that the Party claiming privilege or protection employed procedures reasonably designed to screen out privileged materials.

5.      If a Party determines that is has produced a document upon which it wishes to make a claim of privilege, the producing Party shall promptly give all counsel of record notice of the claim of privilege.  The notice shall identify each such document and the date it was produced.  If the producing Party claims that only a portion of a document is privileged, the

producing Party shall provide a new copy of the document with the allegedly privileged portions redacted with the notice of the claim of privilege.  Any Party that complies with this paragraph will be deemed to have taken reasonable steps to rectify disclosures of privileged or protected information or materials.

6.      If a Party identifies a document that appears on its face or in light of facts known to the Party to be subject to another Party's claim of privilege, the Party identifying the potential claim of privilege is under a good-faith obligation to notify the Party holding the potential claim of privilege.  Such notification shall not waive the identifying Party's ability to subsequently challenge any assertion of privilege with respect to the identified document.  If the Party holding the potential claim of privilege wishes to assert a claim of privilege, it shall promptly provide notice in accordance with paragraph 5, above, after receiving notice from the identifying Party.

7.      Upon receiving notice of a claim of privilege on a produced document, the receiving Party must, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the specified information and any copies it has and may not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved.  The receiving Party may not review the contents of the specified information, except for the limited purpose of determining whether a privilege applies.   Only one attorney may review the specified information to determine privilege.  No named Party shall be permitted to review the specified information  prior to resolution of the privilege claim.   In the case of highly-privileged information, any Party may request in camera review of the documents in dispute.  Copies of privileged documents or information that have been stored on electronic media that is not reasonably accessible, such as disaster recovery backup media, are adequately sequestered as long as they are not restored; if such data is restored, the receiving Party must take steps to re-sequester the restored information.  If the receiving party disclosed the information before being notified, it must take reasonable steps to prevent further use of such information until the claim is resolved.

8.      If a Party wishes to dispute a claim of privilege asserted under this Order, such Party shall move the Court for an order compelling disclosure of the information.  The Party

8

shall follow the procedures described in Fed. R. Civ. P. 26(b)(5)(B).  Pending resolution of the motion, the Parties shall not use the challenged information for any other purpose and shall not disclose it to any person other than those required by law to be served with a copy of the sealed motion.

9.     Nothing in this order overrides any attorney's ethical responsibility to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing Party that such materials have been produced.

10.    The Party wishing to assert a claim of privilege retains the burden, upon challenge, of establishing the applicability of the claimed privilege.  This Order does not preclude a Party from voluntarily waiving any claims of privilege.  The provisions of Rule 502(a) of the Federal Rules of Evidence apply when a Party uses privileged information to support a claim or defense.

**E.     Preparation of Privilege Log**.

1.     The obligation to provide a log of privileged or work product materials pursuant to Rule 26(b)(5)(A) presumptively will not apply to privileged or work product materials that are: (a) communications exclusively between a Party and its trial counsel; (b) work product created after November 1, 2013; or (c) internal communications within a law firm, provided that the communications are solely among attorneys.

2.     **Embedded emails**.  An email shall be treated as a single document regardless of the number of embedded emails contained within the message body.  The privilege log for an email withheld under a claim of privilege, to the extent any is required, shall identify the author, recipient(s), subject, dates and times based on the metadata from the top-level message, and shall not include any data from any email embedded in the message body.  However, if an email contains both privileged and non-privileged communications, the non-privileged communications must be produced.  This requirement should be satisfied by producing the original of the embedded, non-privileged email, but if the original is not available, it may be satisfied by producing a redacted version of the privileged email.

/ / /

**F.**     **Costs of Document Production**.

    1.     Unless this Court orders otherwise for good cause shown, each Party shall bear the costs of producing its own documents.

**G.**     **Modification**.

    1.     This protocol may be modified by court order or by stipulation of the parties for good cause shown.

H.     **Integration/Appendix**.

    1.   The following document is  incorporated herein by reference:

    Exhibit A, entitled "Technical Specifications for Document Production" and contains instructions relating to the mode and method by which ESI will be produced in this action.

    DATED this 5th day of December, 2014.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

# EXHIBIT A

# Technical Specifications for Document Production

## General Instructions

1. Please provide a cover letter with each production which includes the Bates range and a general description of the documents and/or the custodian(s).  The cover letter should also summarize the number of records, images, emails and attachments in the production.

2. Produce documents in the same format that they were created or maintained.  To the extent possible, every page of every document produced should be Bates endorsed as described below.

3. Deliver data on CD, DVD, or hard drive.  The smallest number of media is requested. If the collection is so large it should be delivered on a hard drive, one can be provided, if needed.

4. Provide all productions free of computer viruses.

5. Provide all passwords for documents, files, or compressed archives provided in the production.

6. Label all media submitted.  Include on the label at least the following information: producing party, production date, Bates or Document ID range(s) and disk number, if applicable.

## Paper Documents

Special attention should be paid to ensure that hard-copy documents are produced as they are kept, reflecting attachment relationships between documents and information about the file folders within which the document is found.  In addition, multi-page documents must be produced as a single document (*i.e.*, properly unitized) and not as several single-page documents.

1. Preferred formats for production of paper documents:
   a.  Each page uniquely Bates numbered (see protocol below).

2. Paper documents Bates Numbering Protocol:
   a.  Bates numbers should be defined and endorsed in the following alpha-numeric style:
      ABCD0000001

      ABCD = alpha identifier for custodian or producing entity
      0000001 = document page number

      After the initial production, any subsequent or supplemental productions should use the same protocol, with document pages numbered beginning after the last number of the immediately previous production.

Bates numbers should not contain embedded spaces (" "), slashes ("/"), backslashes ("\"), or underscores ("_").

3. Scanned paper converted/processed to Text-searchable PDF files. All PDF files should meet the following requirements:
   a. All PDFs should be unitized, *i.e.*, each PDF represents a discreet document; a single PDF should not contain multiple documents.
   b. All PDFs should contain embedded text to include all discernable words within the document, not selected text.
   c. If Bates endorsed, the PDF file should be named as the Bates range, with ALL document text contained within.

**Electronic Data**

All electronic data should be collected, processed and produced and produced in a manner that insures that all files reflect the accurate metadata associated with the creation and maintenance of the files and is not corrupted by the methods of the collection of the data.

1. **Native File Production**. Electronic documents, for example, Microsoft Excel files or Microsoft Word files and other type files that reasonably require viewing in their native format for a full understanding of their content shall be produced in their native format. Note, any electronic documents, regardless of format, that require redaction should be converted to TIFF and redacted.
   a. Spreadsheets
      Spreadsheets should be produced in full slide image format along with speaker notes, with any speaker notes following the full images of the slides with related searchable text and metadata and bibliographic information. Presentations should also be produced in native format (*e.g.,* as .PPT files).

2. **Email Production**.
   a. The following email collection formats are acceptable:
      i. PST – a personal storage file native to Microsoft Outlook. You must provide any necessary passwords or decryptions.
      ii. NSF – a personal storage file native to Lotus Notes. You must provide any necessary passwords or decryptions.
      iii. HTML – an acceptable format. You must provide any necessary passwords or decryptions.